UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID ABREU | : |
| Plaintiff, | : Civil Action No. 14-716 (MAS)(DEA) |
| v. | : **OPINON** |
| THE STATE OF NEW JERSEY, et al. | : |
| Defendants. | : |

ARPERT, Magistrate Judge

This matter comes before the Court on a motion by Plaintiff to compel discovery. In dispute are a number of document requests propounded by Plaintiff on the State of New Jersey and the New Jersey Department of Corrections (together, "Defendants").[1] Defendants have opposed the motion. The Court decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons herein, Plaintiff's motion is granted in part and denied in part.

**I. Background**

This is an action against the State of New Jersey, the New Jersey Department of Corrections ("DOC") and various individual defendants pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq*. ("Title VII"), the Conscientious Employee Protection Act, N.J.S.A, 34:19-1, *et seq.*, ("CEPA") and the New Jersey Law Against Discrimination 10:5-1, *et seq.* ("LAD"). At the relevant time, Plaintiff David Abreu ("Plaintiff") was an

---

[1] According to Plaintiff's moving papers, he seeks to compel discovery from "the Defendants." *See*, *e.g.*, Notice of Motion (ECF No. 24), Pl. Br. (ECF No. 24-1). In support of his motion, he provides a certification of counsel to which is attached "Defendants' Responses to Plaintiff's Document Requests." ECF No. 24-2 at ¶ 3. These responses are those of the State of New Jersey and the New Jersey Department of Corrections only. As such, the Court construes the motion as being directed only at the State and the Department of Corrections.

employee of the DOC.  He alleges that he was subject to unlawful discrimination and a hostile work environment, and that he was retaliated against after he complained about this and allegedly unsafe working conditions, including exposure to asbestos.  In July 2014, a Consent Order was entered dismissing certain claims.  The claims that remain in this case are as follows:  Count I, a hostile work environment claim based on race, ethnicity, national origin and/or color under LAD; Count II, a discrimination claim based on race, ethnicity, national origin and/or color under LAD; Count III, a retaliation claim arising from complaints about alleged discrimination under LAD; Count IV, a retaliation claim under CEPA; Count V, a retaliation claim arising from complaints about alleged discrimination under Title VII (against NJ and DOC only); Count VI, a Title VII hostile work environment claim (against the state and DOC only); and Count VII, a Title VII discrimination claim (against the state and DOC only).

The present discovery dispute concerns a number of Plaintiff's documents requests.  These are as follows:

     4.  Provide any and all written statements obtained by Defendants from any person relevant to the subject matter of this litigation and all documents which refer or relate to same.

     7.  Provide any and all documents or correspondence including, but not limited to, any notes made by Defendants which refer or relate to the subject matter of this litigation.

     8.  Provide any and all documents that comprise, refer, or relate in any way to any taped recordings, videos, or other electronic recording device of any interviews of Plaintiff, any of the named Defendants, or any potential witnesses in this action.

     11.  Provide the contents of any other file or files other than Plaintiff's personnel files which refer or relate to Plaintiff kept by Defendants.

     15.  Any and all records or documents pertaining to any PEOSHA complaints or investigations regarding the DOC for the last 5 years.

16. All documents in the State's or the Defendants' possession regarding complaints of discrimination, harassment, hostile work environment or retaliation, by DOC employee Jose Torres, against the DOC or any of its employees.

18. All policies, procedures, rules and regulations governing the operations of the Albert C. Wagner Youth Correctional Facility, including its Maintenance Department, for the last 10 years.[2]

21. Provide any and all documents that comprise, refer, or relate in any way to Defendants' rules and regulations, procedures, policies, manuals, orders, interoffice communications, or other documents pertaining to (a) Discrimination; (b) The Maintenance Department; (c) Employee Safety and/or Workplace Safety; (d) Asbestos on or at Public Facilities, including State Prisons; (e) Affirmative Action;(f) Promotions within the DOC; (g) Transfers within the DOC; and (h) the procedures governing any type of allegation of retaliation and whistleblowing.

25. Provide all documents concerning any previous complaints, since 2010,including lawsuits, internal complaints, regardless of whether a lawsuit was filed or not, which were made by an employee, independent contractor or former employee of Defendants which claimed Defendants (a) violated the Conscientious Employee Protection Act (CEPA) or any violation of public policy; (b) violated the New Jersey Law Against Discrimination; (c) engaged in retaliation; and/or (d) engaged in discriminatory behavior.

28. Provide all documents that comprise, refer, or relate in any way to any of the Individual Defendants discipline or internal investigation files for the time period of January 1, 2010 through the present, where they have been accused of, cited for or charged with any of the following:
    a. a violation of CEPA or public policy including whistleblowing; and
    b. interfering and/or retaliating against an employee or former employee because that individual refused to participate in unlawful practices;
    c. discrimination or a hostile work environment.

29. All SID files and records in any way pertaining to (a) Plaintiff; and (b) any of the Individual Defendants.

31. All documents in the possession of the State, or any of its agencies, including Defendants, the DOC, the Department of Labor, the State's Public Employers Occupational Safety and Health Department, the State Department of Health, the Department of Inspections, or the Attorney General's Office, pertaining to or related in any way to (a) asbestos in the State Prisons; (b) exposure of State employees, including DOC employees, to asbestos in the workplace; or (c) exposure of State Prison Inmates to asbestos. This request includes the production of documents pertaining to asbestos cleanup, removal or mitigation at

---

[2] The parties have resolved their dispute as to this request. The parties have agreed that Defendant shall produce indices from which Plaintiff may narrow his request.

any State Prisons or DOC worksites. This request should also include any OSHA or PEOSHA violations or citations related to asbestos at any State Prison or DOC worksite.

32. Any and all records or documents in the possession of the DOC's Equal Employment Division concerning (a) Plaintiff; (b) any of the Individual Defendants; (c) any allegations or complaints concerning discrimination, racism, or a hostile work environment within the DOC for the last 7 years.

33-38. Copies of any and all of Defendants' (John Giberson, Meg Yatauro, SID Investigator John Antinoro, Assistant Superintendent John Stigliano, Sgt. Richard Nappa, and Erick Sellnow) records, documents, and notes, during the time period of January 1, 2010 through the present date, that pertain to or in any way related to Plaintiff or to Defendant Erick Sellnow.

39. Provide all documents regarding any correspondence, including e-mails, between any of the Defendants which referenced Plaintiff and/or the allegations in his Complaint including, but not limited to, discipline, his complaints about discrimination, worker safety, and a hostile work environment, his job assignments, his work performance, and his transfer. (Each Defendant shall, to the extent he/she has not done already done so, take immediate steps to secure, preserve and produce all such pertinent email/electronic correspondence.)

40 through 51. Requests numbered 40-51 seek personnel files, internal investigation files, disciplinary files, and performance evaluations as to the individual Defendants, as well as copies of any and all documents that comprise, refer, or relate in any way to any internal investigation file where the individual Defendants were either the complainant, the principal, or a witness in the investigation.

52. Copies of all records, documents, and notes concerning the problems with heat, the lack of heat, broken steam lines, and efforts to repair or address the heat problems, at the ACWYCF Maintenance Department in 2012-2013. This includes any repair records and any related investigations into same, as well as documents related to the use of space heaters to address this problem and the allegation that Plaintiff had damaged a space heater. This request expressly includes all documents received by, generated by or in the possession of Defendant John Antinoro regarding same.

53 and 54. Requests numbered 53 and 54 sought documents regarding the discipline, or lack thereof, pertaining to Defendant Erick Sellnow, Ken Budden, Robert Brady, Dominick Tedesco (all Caucasian individuals), or any other DOC employee in connection with the repairs or attempted repairs of the steam lines in the Maintenance Department, as described in Plaintiff's Complaint.

56. All documents generated by, in the possession of, or received by Hearing Officer Peter Gerke, concerning the lack of heat, the use of space heaters, the allegation that Plaintiff damaged same, and the repair of the steam pipes.

56. (sic) Copies of all documents and materials pertaining to Plaintiff's complaints and subsequent investigation into his complaints in March 2013 regarding unsafe work practices with respect to digging to repair a leak at the DOC. This includes all documents in the possession of the State DEP, as well as all documents reflecting communications with PSE&G concerning same.

57. Copies of all documents and materials pertaining to Plaintiff's applications for promotions since June 2012. This Request includes specifically all documents regarding the Assistant Engineer position in charge of Maintenance at ACWYCF, including all applications, all evaluations and all documents concerning the ultimate selection of Dominick Tedesco for that position.

58. A complete copy of Dominick Tedesco's entire personnel file. This would include copies of all pertinent contracts, as well as disciplinary records, promotion records and performance reviews.

59. Provide the contents of any other file or files other than personnel files which refer or relate to Dominick Tedesco kept by Defendants.

**II. Analysis**

Rule 37(a) allows a party to file a motion to compel discovery where the opposing party fails to respond adequately to a discovery request. Fed. R. Civ. P. 37(a). Ultimately, it is within the discretion of the Court to grant a motion to compel disclosure when good cause is shown. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 (3d Cir. 2003). Below, the Court first addresses the parties' disputes as to broad categories of documents, and then addresses disputes regarding individual document requests as necessary.

A. Equal Employment Division Internal Investigation Materials

1. EED Materials Generally

Defendants raise a blanket objection to the production of materials related to internal investigations conducted by the DOC's Equal Employment Division ("EED"), which are responsive to Requests Nos. 4, 8, 11 (as to EED files), 16, 25, 28, 32, 41, 44, 45, 47, 49, and 51. Defendants have refused to produce such materials, contending that materials relating to

5

EED complaints, investigations and determinations are "confidential." *See*, *e.g.*, ECF No. 27 at 8. Defendants point to, for example, the New Jersey Administrative Code, which directs that, with respect to such investigations,

> All complaints and investigations shall be handled, to the extent possible, in a manner that will protect the privacy interests of those involved. To the extent practical and appropriate under the circumstances, confidentiality shall be maintained throughout the investigative process.[3]

N.J.A.C. 4A:7-3.1(j). Defendants also point to an Executive Order, which provides that records related to complaints and investigations into potential violations of the State Policy Prohibiting Discrimination, Harassment and Hostile Environments in the Workplace are not subject to public access under the Open Public Records Act. ECF No. 27, Ex. D at ¶ 4. Further, Defendants state that Plaintiff acknowledged the confidentiality of the EED complaint when he signed the form provided to all complainants containing provisions indicating the complaint investigation was confidential.

According to Plaintiff, Defendants have withheld the EED investigation materials responsive to his requests and have provided a privilege log in which Defendants claim the materials are "confidential." The burden to establish that a privilege applies is on the party asserting the privilege. *See Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982); *Matter of Grand Jury Empaneled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979). In response to Plaintiff's motion, Defendants argue that the EED materials are protected by "a conditional privilege that applies selectively depending on the nature of the materials involved" that was recognized by the Supreme Court of New Jersey in *Payton v. New Jersey*

---

[3] Although, as discussed *infra*, New Jersey state law is not controlling here, the Court notes that New Jersey courts and the regulation itself recognize that the confidentiality is not absolute. *See In re F.P.*, No. A-1368-13T4, 2015 WL 3602607, at *8 (N.J. Super. Ct. App. Div. June 10, 2015) (noting the regulation requires the protection of privacy interests "to the extent possible."); N.J.A.C. 4A:7-3.1(j) (requiring confidentiality to be maintained "to the extent" it is "practical and appropriate.")

*Turnpike. Auth.*, 148 N.J. 524, 545, 691 A.2d 321, 331 (1997).  In *Payton*, the plaintiff brought suit under New Jersey's LAD against her employer and supervisors, alleging sexual harassment.  Plaintiff sought discovery of the employer's confidential internal investigation for the purpose of establishing the employer's liability for its failure to respond to her complaints.  The *Payton* Court noted that the issue before it involved the tension between two competing public interests, one favoring disclosure (*i.e.*, "to ensure that employers maintain effective sexual-harassment procedures") and the other favoring confidentiality (*i.e.*, "to enable employers to maintain effective procedures that encourage reporting and candid statements by all involved").  *Payton*, 148 N.J. at 541.  Identifying the existence of a public interest in the protection of "the confidentiality of those involved in the investigation if a loss of confidentiality would otherwise undermine the efficacy of investigations," the Court in *Payton* fashioned a "conditional privilege" rather than a "blanket privilege" which, on application, permits the trial court to supervise discovery and protect confidentiality by procedures, short of suppression, which "may include redaction, issuance of confidentiality or gag orders, and sealing of portions of the record," when a competing public interest favors disclosure.  *Id.* at 542.  *Payton* set forth a "case-by-case balancing approach" when considering the confidentiality of internal investigative reports. *Id.* at 549.  Defendants urge the Court to apply *Payton* and contend that its balancing test directs denial of Plaintiff's motion to compel.

However, Defendants' exclusive reliance on state confidentiality principles and New Jersey's "conditional privilege" is misplaced.  State law confidentiality provisions do not automatically create evidentiary privileges in federal court.  As stated by the Third Circuit in addressing an analogous situation,

> discovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence[;] the state statutory confidentiality provisions that have been invoked … do not directly govern the present dispute. Only to the extent that federal law may recognize the force of those provisions are they relevant here. The ultimate issue is whether the discovery sought is permitted as a matter of federal law.

*Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000). Further, because the present case involves both state and federal claims, federal privilege laws apply here. *Pearson*, 211 F.3d at 66 (when a matter involves both federal and state claims, courts should apply federal privilege law). The question before this Court, therefore, is whether the application of federal law governing discovery disputes prohibits the release of the requested materials either "because federal law recognizes one or more applicable evidentiary privileges, or because federal law otherwise provides for the protection of the information here in dispute." *Id.* at 61.

Defendants have not established (or even argued) that that there is an applicable evidentiary privilege recognized by federal law or that federal law provides for the protection of the disputed information. Defendants need to do more than assert non-binding state confidentiality provisions to support their contention of privilege. Defendants simply have not established grounds to support their across-the-board refusal to produce the EED materials under a claim of privilege.

Although Defendants' primary argument against production of the EED materials is based upon privilege/confidentiality, Defendants also raise the issue of relevance (albeit in the context of the *Payton* balancing test). Rule 26(b)(1) requires production of nonprivileged information that is relevant to plaintiff's claim or claims. Defendants make a blanket assertion that the EED materials are "not sufficiently relevant" to be subject to discovery. ECF No. 27 at 18. The Court disagrees and finds, as a general matter, the materials sought to be relevant

to the claims and defenses[4] in this action. "[T]he efficacy of an employer's remedial program is highly relevant to both an employee's claim against the employer and the employer's defense to liability." *Payton*, 148 N.J. at 537; *see also Aguas v. State*, 220 N.J. 494, 499 (2015) ("[A]n employer's implementation and enforcement of an effective anti-harassment policy, or its failure to maintain such a policy, is a critical factor in determining negligence and recklessness claims" against an employer.). Plaintiff is entitled to discovery to investigate, for example, LAD's requirement of whether "those policies and procedures have been implemented in such a way as to reflect an 'unequivocal commitment from the top management that [the employer's stated intolerance for workplace harassment] is not just words, but backed up by consistent practice.'" *Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 431 (D.N.J. 2003) (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 621(1993). The Court, therefore, grants Plaintiff's motion as to these materials subject to the conditions below.

The Court is not unmindful of the important interests implicated here and notes that the unrestricted release of the EED materials may not necessarily be appropriate. Federal Rule of Civil Procedure 26(c) empowers the Court to issue protective orders constraining in a variety of ways the release of sensitive information. As the court in *Pearson* noted,

> Legitimate interests in privacy are among the proper subjects of [Rule 26(c)'s] protection. "It is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Such an order is only appropriate, however, where the party seeking the order "show[s] good cause by demonstrating a particular need for protection." *Id.* To make a showing of good cause, the party

---

[4] For example, Defendants' Twenty-First Affirmative Defense states: "Defendant Department of Corrections took prompt and remedial action to prevent and correct promptly any allegedly discriminatory or harassing behavior."

seeking confidentiality has the burden of showing the injury "with specificity." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984).

*Pearson*, 211 F.3d at 72-73. The Court finds there is good cause for the entry of a Protective Order here. Although a "Discovery Confidentiality Order and Protective Order" is already in place in this case, *see* ECF No. 21, given the nature of the EED materials subject to discovery, further protective measures may be appropriate. Recognizing this, Defendants have asked that the "parties and the Court … address separately the exact protective measures that are necessary for each document." ECF No. 27 at 28.[5] The parties, therefore, are directed to confer and submit to the Court an appropriate Protective Order with respect to these confidential materials (and other materials discussed herein) that may include the use of such tools as redaction, attorneys-eyes-only designations, restrictions on the use of the disclosed materials, etc.

### 2. EED/Litigation Complaints of Non-Party Employees

Document Requests 16, 25 and 32 seek materials relating to complaints of discrimination and retaliation made by others employed by Defendants. Defendants object to the production of these materials because they (2) "implicate the privacy interests of non-parties;" and (2) to the extent they relate to facilities other than that at which Plaintiff worked, such information is not relevant and the request is overbroad.

As another district court in this circuit has observed, "[o]btaining information of 'incidents of the same type' is uniquely important in discrimination claims" and "courts have given a wide berth to such requests, since "the nature of the proofs required to demonstrate

---

[5] Defendants also state that the Court "should also address the attorney-client privilege and work-product doctrine which may apply to certain aspects of the investigation." ECF No. 27 at 28 (citation and alterations omitted). However, they have offered no argument regarding these privileges and no assertion of these privileges appear in Defendants' privilege log. *See* ECF No. 27-1 at Ex. H.

10

unlawful discrimination may often be indirect or circumstantial." *Laurenzano v. Lehigh Valley Hosp., Inc.*, No. CIV. A. 00-2621, 2001 WL 849713, at *1 (E.D. Pa. July 18, 2001). Thus, the Court finds certain portions of the information requested to be relevant. However, Plaintiff's requests are overbroad. Document Request No. 25, for example, seeks all complaints of any type brought since 2010 by any one of the DOC's 10,000 employees as well as any former employees and independent contractors. Plaintiff worked at the Albert C. Wagner Youth Correctional Facility ("Wagner") and his allegations relate to his work there. Therefore, the Court will grant Plaintiff's motion but limit the materials to be produced to those involving complaints arising from or related to events or personnel at the Wagner facility. Furthermore, the Court finds that Plaintiff has made no showing of a need for the specific identities of any of the complainants, only the nature of their complaints.[6] Therefore, the Court directs that the materials be produced in redacted form and/or be subject to other protective measures which the parties shall set forth in the Protective Order to be submitted as discussed above.

B.  Discipline and Personnel Files

Similar to their position with regard to the EED files, Defendants make a blanket objection to Plaintiff's requests for any personnel and discipline files. These materials are responsive to the following Document Requests: 28 (as to discipline files), 40, 42, 43, 46, 48, 50 (as to personnel and discipline files), 53, 54, 58, and 59. Defendants' primary argument here, as with the EED files, is that these materials are confidential and protected from disclosure by "various Executive Orders and by case law." ECF No. 27 at 30. As noted above, discovery in this case is governed by federal law, and Plaintiff has not cited any

---

[6] This will, however, naturally involve the release of certain identifying information in some instances, such as a complainant's race in racial discrimination complaints.

federal law of privilege that permits them to simply withhold relevant materials as "confidential."

Nevertheless, to the extent that litigants seek personnel files in discovery, courts have long recognized that:

> Although personnel files are discoverable, they contain confidential information and discovery of them should be limited. *See, e.g., Reagan–Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir. 2008) ("Personnel files often contain sensitive personal information ... and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly.... This is not to say personnel files are categorically out-of-bounds."); *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D.Pa.1994) ("[P]ersonnel files are confidential and discovery should be limited."). The court must weigh the right to relevant discovery against the privacy interest of non-parties.

*Maritnez v. Jones*, No. 3:12-CV-1547, 2015 WL 3454505, at *4 (M.D. Pa. May 29, 2015) (quoting *Harris v. Harley–Davidson Motor Co. Operations, Inc.*, No. 09–1449, 2010 WL 4683776, *5 (M.D. Pa. Nov. 10, 2010)).  Here, as Defendants point out, there is a great deal of information in the requested personnel files that is not relevant to Plaintiff's claims (*e.g.*, payroll information, medical benefits).  It appears, however, the primary focus of Plaintiff's requests are disciplinary records, which the Court finds are relevant to Plaintiff's allegations that, for example, discipline was imposed in a discriminatory fashion.  As such, the Court will compel the disclosure of disciplinary records, subject to an appropriate Protective Order as discussed above.

With respect to personnel files, Plaintiff seeks to compel the production of the personnel files and any other files in Defendants' possession related to Dominick Tedesco, who received a promotion that Plaintiff alleges he was denied as a result of unlawful discrimination and retaliation.  Courts have recognized that a plaintiff may show disparate treatment by comparing his credentials with the credentials of others.  *Dixon v. Rutgers*, 110

N.J. 432, 443-444 (1988). Plaintiff states that the purpose of Requests 58 and 59 are to obtain Mr. Tedesco's "disciplinary records, promotion records, and performance reviews so that an honest comparison can be made between Plaintiff and Mr. Tedesco." ECF No. 24-1 at 17. However, Plaintiff's request is much broader than that. Therefore, the Court will grant Plaintiff's motion to compel only as to the production of Mr. Tedesco's disciplinary records, promotion records, and performance reviews, subject to an appropriate Protective Order as discussed above.

C.  Special Investigation Division Materials

Plaintiff seeks records from the Special Investigation Division ("SID") that pertain to Plaintiff and the individual defendants (Requests No. 29, 33-38). Defendants respond that there is one responsive SID file and have refused to produce this file, citing state law confidentiality provisions. For reasons already discussed, Defendants have not established that these materials are privileged or irrelevant. Consequently, the Court will compel their disclosure subject to an appropriate Protective Order as discussed above.

D.  Remaining Individual Document Requests

1. Document Request No. 7

Defendants object to Document Request No. 7, which seeks "any and all documents or correspondence including, but not limited to, any notes made by Defendants which refer or relate to the subject matter of this litigation." Defendants simply contend that this request is "overbroad, vague and ambiguous." ECF No. 27 at 36. They further argue that Plaintiff has failed to describe each item or category with reasonable particularity, as required by Federal Rule of Civil Procedure 34, because, for example, "the subject matter of this litigation" is not defined. The Court disagrees and does not find the request to be impermissibly vague,

overbroad, ambiguous or lacking the requisite particularity. Defendants will be compelled to respond.

    2. Document Request No. 8

Request No. 8 seeks "any and all documents that comprise, refer, or relate in any way to any taped recordings, videos, or other electronic recording device of any interviews of Plaintiff, any of the named Defendants, or any potential witnesses in this action." Defendants state that this request was initially objected to based on the alleged confidentiality of EED files. Defendants have now supplemented their response to advise that they have one video of a partial SID interview with Plaintiff that will be produced. To the extent there are other responsive materials, Defendants state they are "confidential" and their production should not be compelled. The Court has already addressed the same argument regarding the confidentiality of the EED and SID material above, and any materials responsive to this request being withheld as "confidential" are to be produced accordingly.

    3. Document Request No. 11

This Request seeks "the contents of any other file or files other than Plaintiff's personnel files which refer or relate to Plaintiff kept by Defendants." Defendants' only response to Plaintiff's motion with respect to this Request is to advise that all "non-confidential" responsive documents have been produced. To the extent that there are any "confidential" materials responsive to this request being withheld, Defendants have not established a basis to withhold them. The Court has already addressed the issue of confidentiality of the EED and SID materials above, and any materials responsive to Request No. 11 being withheld as "confidential" are to be produced and handled in a similar matter.

    4.  <u>Document Request No. 15</u>

This Request seeks "[a]ny and all records or documents pertaining to any PEOSHA [Public Employees Occupations Safety and Health Department] complaints or investigations regarding the DOC for the last 5 years."  Defendants respond that this request is overbroad, burdensome and irrelevant, and the Court agrees.  Indeed, the DOC operates 13 facilities in New Jersey as well as an administrative complex and it employs approximately 10,000 people.  The DOC has produced all of the material in its possession relating to Plaintiff's PEOSHA complaint, which is relevant to the allegations in the Complaint.  The Court, therefore, denies Plaintiff's motion as to this Request.

    5.  <u>Document Request 21</u>

This Request seeks "any and all documents that comprise, refer, or relate in any way to Defendants' rules and regulations, procedures, policies, manuals, orders, interoffice communications, or other documents pertaining to (a) Discrimination; (b) The Maintenance Department; (c) Employee Safety and/or Workplace Safety; (d) Asbestos on or at Public Facilities, including State Prisons; (e) Affirmative Action; (f) Promotions within the DOC; (g) Transfers within the DOC; and (h) the procedures governing any type of allegation of retaliation and whistleblowing."  Defendants have objected to this Request as overbroad, in that it seeks materials that "comprise, refer or relate in any way" to an array of materials covering eight subjects relevant to the entire DOC, not merely the facility at which Plaintiff worked.  The Court finds that this request is overbroad as it encompasses a substantial amount of information that has no relevance to the claims in this case.  The Court, therefore, denies Plaintiff's motion as to this Request.

15

      6.  <u>Document Request 31</u>

This Request seeks "[a]ll documents in the possession of the State, or any of its agencies, including Defendants, the DOC, the Department of Labor, the State's Public Employers Occupational Safety and Health Department, the State Department of Health, the Department of Inspections, or the Attorney General's Office, pertaining to or related in any way to (a) asbestos in the State Prisons; (b) exposure of State employees, including DOC employees, to asbestos in the workplace; or (c) exposure of State Prison Inmates to asbestos. This request includes the production of documents pertaining to asbestos cleanup, removal or mitigation at any State Prisons or DOC worksites. This request should also include any OSHA or PEOSHA violations or citations related to asbestos at any State Prison or DOC worksite." Defendants object to this request as overbroad and burdensome, and the Court sustains that objection. The breadth of this request is vast, and the majority of materials sought hold little, if any, relevance to the claims in this case. The DOC has produced the responsive documents in its possession related to Plaintiff's complaint about asbestos at the Wagner facility. The remaining documents sought by this Request are not relevant to Plaintiff's claim that he was retaliated against for complaining about potential exposure to asbestos as Wagner. Plaintiff's motion to compel is denied as to this Request.

      7.  <u>Document Request Nos. 33-39</u>

Since the filing of this motion, Defendants have advised Plaintiff they have no documents responsive to these Requests. As the Court cannot compel Defendants to produce what they do not have, Plaintiff's motion is denied as to these Requests.

8. Document Request 52

Request 52 seeks "[c]opies of all records, documents, and notes concerning the problems with heat, the lack of heat, broken steam lines, and efforts to repair or address the heat problems, at the ACWYCF Maintenance Department in 2012-2013. This includes any repair records and any related investigations into same, as well as documents related to the use of space heaters to address this problem and the allegation that Plaintiff had damaged a space heater. This request expressly includes all documents received by, generated by or in the possession of Defendant John Antinoro regarding same." In response to Plaintiff's motion, Defendants brief simply states that "[t]his broad request was properly objected to." This is insufficient, particular because this is a fairly specific request. The Court grants Plaintiff's motion with respect to this Request.[7]

9. Documents Requests Nos. 56[8] and 57

Defendants have responded that they have produced all of the responsive documents in their possession. The Court, therefore, denies Plaintiff's motion with regard to these requests.

10. Two Items From Privilege Log

Plaintiff takes issue with two items listed on Defendants' Privilege Log in connection with Plaintiff's Workers' Compensation file. Defendants have produced Plaintiff's Workers' Compensation file, but have withheld two documents that they identify in their privilege log as irrelevant. Defendants explain that these two document are documents related to another employee that were misfiled in Plaintiff's file. As there is simply no reason to compel the

---

[7] Documents in the exclusive possession of John Antinoro (and not in the custody or control of Defendants) are not the subject of the Court's ruling. It does not appear that Mr. Antinoro has been served in this action and, in any event, Plaintiff has directed this motion to the State and DOC only.
[8] This includes the two different Requests that were each numbered "56".

17

production of such material, the Court denies Plaintiff's motion with respect to these documents.

### III.  Conclusion

For the reasons above, the Plaintiff's motion is granted in part and denied in part.  An appropriate Order accompanies this Opinion.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge